UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 6:20-CR-52-CHB-HAI |
| v. ) | No. 6:24-CR-02-CHB-HAI |
| ) | |
| TIMOTHY ASHLEY PADGETT, ) | RECOMMENDED DISPOSITION |
| ) | |
| Defendant. ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

The Court, on referral from District Judge Boom, considers reported supervised release violations by Defendant Timothy Ashley Padgett in two separate cases. *See* D.E. 32 at 2 in 6:20-CR-52-CHB-HAI; D.E. 4 at 1 in 6:24-CR-02-CHB-HAI. District Judge Lacy H. Thornburg of the Western District of North Carolina entered a judgment against Defendant on December 30, 2005 in what became 6:24-CR-02-CHB-HAI (the "North Carolina" case), following a jury verdict of guilty on the first two counts of the indictment in that case. D.E. 1-2 at 1 in 6:23-CR-02-CHB-HAI. Defendant was found guilty of violating 21 U.S.C. § 841(c) (possession of pseudoephedrine with intent to manufacture methamphetamine) and 21 U.S.C. § 846 (conspiracy to manufacture methamphetamine). *Id*. Defendant was originally sentenced to 262 months of imprisonment and a four-year term of supervised release. *Id.* at 2–3. During that prison term, on September 14, 2021, District Judge Boom entered judgment against Defendant after a plea of guilty to 18 U.S.C. § 1791(a)(2) (possession of contraband) (the "Kentucky" case). D.E. 31 at 1 in 6:20-CR-52-CHB-HAI. Defendant was sentenced to five months of incarceration to run consecutively to the sentence imposed in the North Carolina case and a two-year term of supervised release. *Id*. at 2-3.

Defendant was released from custody to begin service of his four-year term of supervised release on October 3, 2023. On December 19, 2023, the United States Probation Office ("USPO") issued the Supervised Release Violation Report ("the Report") that initiated proceedings in the Kentucky case and secured an arrest warrant on December 20, 2023. D.E. 33 in 6:20-CR-52-CHB-HAI. Defendant was arrested on January 4, 2024. The December 19, 2023 Report was amended on January 8, 2024. A second Report was issued on January 17, 2024, in the North Carolina case. The two Reports charge the same three violations. Violation #1 alleges that Defendant failed to refrain from the unlawful use of a controlled substance, specifically methamphetamine. This is a Grade C violation. Violation #2 alleges unlawful possession of methamphetamine in violation of 21 U.S.C. § 844(a). *See* 18 U.S.C. § 3583(d) (setting forth mandatory supervised release conditions.) This is a Grade B violation. Violation #3 alleges new criminal conduct based on Kentucky state charges that Defendant violated K.R.S. § 218A.1415 (possession of a controlled substance in the first degree) and K.R.S. § 218A.500(2) (possession of drug paraphernalia). These charges arise from Defendant's possession of two syringe needles and methamphetamine on his person when he was taken into custody for violating the terms of his supervised release. This is a Grade B violation.[1]

---

[1] Defendant has pled in state court to a reduced charge that would only qualify as a Grade C violation, specifically KRS 218A.1416 (possession of a controlled substance in the second degree, first offense). He was sentenced to 365 days in jail, to be served concurrently with federal prison time from this Court's judgments. Because it is the conduct of the defendant, and not his convictions in any new prosecution, that governs what grade of supervised release violation a defendant has committed, this plea does not dictate the violation grade. *United States v. Montgomery*, 893 F.3d 935, 941 (6th Cir. 2018).

I.

The Court conducted an initial appearance pursuant to Federal Rule of Criminal Procedure 32.1 on January 8, 2024, for Defendant's supervised release violation in the Kentucky case.[2] D.E. 34 in 6:20-CR-52-CHB-HAI. During the hearing, Defendant made a knowing, voluntary, and intelligent waiver of his right to a preliminary hearing. *Id.* At that time, the United States made an oral motion for detention; Defendant did not argue for release. *Id.* Based on the heavy defense burden under 18 U.S.C. § 3143(a), the Court found detention was required. *Id.* The Court also discussed the possible transfer of jurisdiction in the North Carolina case and initiation of violations in that case. Defendant fully understood the dynamic.

At the final hearing for both cases (by that time, jurisdiction of the North Carolina case was transferred to this District) on January 22, 2024, Defendant was afforded all rights under Rule 32.1 and 18 U.S.C. § 3583. D.E. 37 in 6:20-CR-52-CHB-HAI; D.E. 5 in 6:24-CR-02-CHB-HAI. Defendant waived a formal hearing and stipulated to the violations. *Id.* The Court found Defendant to be competent to stipulate to the violations and that the stipulation was knowingly, voluntarily, and intelligently made. *Id.* The Court also found the stipulation to be consistent with the advice of Defendant's counsel. *Id.*

Of course, the Court must find "by a preponderance of the evidence that the defendant violated a condition of supervised release." 18 U.S.C. § 3583(e)(3); *see also United States v. Cofield*, 233 F.3d 405, 406 (6th Cir. 2000) ("In order to revoke supervised release, the sentencing court must find by a preponderance of the evidence that a defendant has violated a condition of his supervised release."). Defendant's stipulation permits the Court to find that he engaged in conduct

---

[2] Defendant's initial appearance on the supervised release violations in the North Carolina case occurred contemporaneously with the joint final hearing.

that is a Grade B violation under the Guidelines, primarily the use of methamphetamine. *See* U.S.S.G. § 7B1.1(a)(2).

II.

Under 18 U.S.C. § 3583(e)(3), a defendant's maximum penalty for a supervised release violation hinges on the gravity of the underlying offense of conviction. Defendant's conviction in the Kentucky case pursuant to 18 U.S.C. § 1791(a)(2) (possession of contraband) is a Class C felony. *See* 18 U.S.C. § 3559(a)(3). Defendant's conviction in the North Carolina case pursuant to 21 U.S.C. § 841(c) (possession of pseudoephedrine with intent to manufacture methamphetamine) is a Class C felony. Defendant's conviction in the North Carolina case pursuant to 21 U.S.C. § 846 (conspiracy to manufacture methamphetamine) is a Class B Felony. For a Class B felony, like in the North Carolina case, the maximum revocation sentence provided under 18 U.S.C. § 3583 is five years of imprisonment. *See* 18 U.S.C. § 3583(e)(3). The revocation maximum in the Kentucky case, based on a Class C felony, is two years of imprisonment. *Id*.

The Policy Statements in Chapter 7 of the Guidelines provide advisory imprisonment ranges for revocation premised on Defendant's criminal history (at the time of original sentencing) and the "grade" of the particular violation proven. *See United States v. Perez-Arellano*, 212 F. App'x 436, 438 (6th Cir. 2007) ("Although the policy statements found in Chapter Seven of the United States Sentencing Guidelines recommend ranges of imprisonment, such statements 'are merely advisory' and need only be considered by the district court before sentence is imposed.") (internal citation omitted). The Guidelines also instruct that, "[w]here there is more than one violation of the conditions of supervision, or the violation includes conduct that constitutes more than one offense, the grade of the violation is determined by the violation having the most serious grade." U.S.S.G. § 7B1.1(b).

The two separate cases generate two different Guideline ranges. Under U.S.S.G. § 7B1.1(a), Defendant's admitted conduct qualifies as a Grade C violation with respect to Violation #1, a Grade B violation with respect to Violation #2, and a Grade B violation with respect to Violation #3. Given Defendant's criminal history category of VI (the category at the time of his conviction in the Western District of North Carolina) and a Grade B violation, Defendant's range, under the Revocation Table of Chapter 7, is twenty-one to twenty-seven months in the North Carolina case. *See* U.S.S.G. § 7B1.4(a). Given Defendant's criminal history category of III (the category at the time of his conviction in the Eastern District of Kentucky) and a Grade B violation, Defendant's range, under the Revocation Table of Chapter 7, is eight to fourteen months in the Kentucky case. *See* U.S.S.G. § 7B1.4(a). Both parties agreed to these separate ranges. Consistent with the guidance of appellate courts, this Court takes the Guidelines-recommended sentence as its starting point and has remained cognizant of it in forming its recommended revocation sentence. *E.g.*, *Molina-Martinez v. United States*, 136 S. Ct. 1338, 1345 (2016).

Congress does ***mandate*** revocation in a case of this nature. By statute, the Court must revoke Defendant's release because he possessed a controlled substance. *See* 18 U.S.C. § 3583(g)(1); *see also United States v. Crace*, 207 F.3d 833, 836 (6th Cir. 2000) (equating use with possession). The Sixth Circuit clearly and repeatedly has equated drug use with drug possession, and Defendant's admitted use in this context undoubtedly results in application of 18 U.S.C. § 3583(g)(1). *See United States v. Hancox*, 49 F.3d 223, 224 (6th Cir. 1995); *see also United States v. Metcalf*, 292 F. App'x 447, 449 n.2 (6th Cir. 2008) ("Mandatory revocation was . . . warranted under § 3583(g)(1), as we have held that use of a controlled substance constitutes possession under that subsection."). The only exception would be if a suitable treatment option, or Defendant's record of involvement in treatment, warranted relief. *See* 18 U.S.C. § 3583(d); *Crace*, 207 F.3d at

5

835 (holding district court was "required by 18 U.S.C. § 3583(g) to revoke the defendant's term of supervised release upon the defendant's positive drug test and admission of the use of a controlled substance unless defendant could come under the exception in 18 U.S.C. § 3583(d)"). Neither side argues the exception applies, and nothing in the record supports its application.

Further, the presence of a Grade B violation means that revocation is recommended under the Guidelines. U.S.S.G. § 7B1.3(a)(1) ("Upon a finding of a Grade A or B violation, the court shall revoke probation or supervised release."). Even if revocation were not mandatory, revocation would be appropriate in this case due to the nature of the violations.

### III.

The United States argued that Defendant's lengthy criminal history supports a harsh sentence. The United States detailed that criminal history. The United States further noted that Defendant's quick violations after being released from prison support a lengthy term of incarceration as they constitute a serious breach of the Court's trust. At the same time, the United States acknowledged that Defendant's acceptance of responsibility counsels a lesser term of incarceration. The United States further explained that the effect of drugs on the community counsels a more substantial sanction. So, the United States sought a twenty-seven month term of incarceration in each case to be served concurrently.

Defense counsel pointed out that the Guidelines recommendation that multiple supervised release violation revocation sentences be served consecutively is a mere policy statement. *See* U.S.S.G. § 7B1.3(f). Defense counsel acknowledged that Defendant had made mistakes in his life, but that he should receive help in reacclimating to the community. Defense counsel stressed that Defendant's long prison term in the North Carolina case was due to his classification as a career offender, and that he would not be considered a career offender if sentenced today. Defense

6

counsel conveyed that Defendant was doing well at his halfway house before re-offending. Defense counsel also stressed that Defendant had taken responsibility for his violations of the law. Defense counsel explained that she thought revocation for twelve months was appropriate in the North Carolina case and requiring Defendant to remain at the halfway house for an additional six-months was appropriate in the Kentucky case. Defense counsel explained that was appropriate considering that Defendant had only four months in a halfway house after nearly twenty years in prison. Defense counsel acknowledged that would be concurrent with the un-served state court term of imprisonment of 365 days in jail.

Defendant allocuted. He acknowledged that he had grown bitter because of his lengthy sentence. He explained that he wanted to get into an actual drug treatment program. He recognized that he completed the Residential Drug Abuse Program ("RDAP") but contended that was not an effective treatment setting. And he argued that he was rushed through the program due to incentives created by the First Step Act. He also noted that drug use is rampant everywhere in federal prison, and that RDAP is no different.

Defendant then turned to his mother, who was involved in a serious traffic accident around the time he was released from prison. His mother remained in the intensive care unit for two months because of that accident, and she had only come back home one week before he was arrested for the supervised release violation.[3] He explained that his mother's accident tore him to pieces. And he stressed that he was not trying to excuse his actions. He explained that he just wanted to live, that he was a hard worker, has obtained his CDL license, and that he had just made a bad choice. Defendant explained that he had learned he was worth it during his nineteen-year

---

[3] Defendant violated the terms of his supervised release on December 16, 2023, but was not taken into custody until January 4, 2024. Thus, his mother remained in the intensive care unit when he violated the terms of his supervised release.

prison sentence. Nonetheless, he recognized that addiction is powerful. He continued that no one is currently living with his mother, but that she needs regular care and other family members do stop by to visit his mother periodically. He used drugs after he sought help with his addiction from the USPO.

IV.

The Court has reviewed the entire record, including the Reports and their accompanying documents, and Defendant's underlying judgments and sentencing materials. The Court has also considered all of the 18 U.S.C. § 3553(a) factors imported into the § 3583(e) analysis. Through that consideration, the Court recommends that Defendant's supervision be revoked and that he be sentenced to a sixteen-month term of imprisonment in each case, to be served concurrently, followed by four years of supervised release in the North Carolina case.

First, the Court considers the nature and circumstances of the underlying offenses. Defendant's underlying offenses are serious, as methamphetamine has caused immense harm to the community. Further, Defendant's possession of drugs in prison demonstrates a serious disrespect for the law, as he broke the law while serving a lengthy sentence. That Defendant's violation conduct closely relates to his initial offenses makes these violations more serious than they otherwise would be. This factor counsels a lengthier sentence.

The Court next considers Defendant's history and characteristics. Defendant resists authority. During his allocution, he spent much time addressing the Bureau of Prisons, using pronouns to distance the institution from the humans that work in it. Defendant spent nearly twenty years in federal prison. Despite that, he has continued to engage in the sort of criminal conduct that he engaged in prior to the imposition of that sentence. That indicates a serious problem. As methamphetamine is much more dangerous today than at the time of his conviction in North

8

Carolina, with fentanyl being mixed in with other street drugs, his continued use indicates that he is seriously reckless.

The need to deter criminal conduct, both for Defendant and society, and the need to protect the public from further crimes heavily influence the Court's recommended sentence, specifically its recommendation of an additional term of supervision. Defendant has turned to criminal conduct repeatedly, as his criminal history plainly demonstrates. Even after Defendant has asked for help, he continued engaging in criminal conduct. This indicates that Defendant could commit future crimes, and therefore this factor supports a lengthier sentence.

The Court must also consider whether a defendant needs any education, training, or treatment. Defendant has previously completed RDAP. While RDAP, like any program, is not perfect, that should not have changed the motivation that Defendant brought to using that program to better himself. Defendant may nonetheless benefit from additional drug treatment, given his continued use of drugs, so the Court will recommend that he be evaluated by the USPO for drug treatment when his supervised release begins. Further, his experience with his mother, and the trauma it put him through indicates that Defendant should be evaluated for mental health treatment upon completion of his term of incarceration. Thus, the Court recommends that Defendant be required to undergo mental health treatment evaluation.

The requirement that the Court seek to avoid unwarranted sentencing disparities among defendants with similar records who are found guilty of similar conduct is most often addressed by a recommended sentence within the Guidelines range. Yet, in this case, the Court believes a sentence outside of the advisory Guidelines range in both cases (one below, one above) is appropriate. In such a scenario, the Court must provide a "specific reason" for going outside of the Guidelines range. *See United States v. Johnson*, 640 F.3d 195, 205 (6th Cir. 2011) (requiring

that any deviation from the Guidelines range be supported by a specific reason that justifies the extent of the deviation). Here, Defendant's allocution establishes that a downward deviation is appropriate in the North Carolina case, as it indicates that his mother's accident substantially contributed to his choice to engage in unlawful activity. While that does not excuse his choice to engage in criminal activity, it does mitigate the severity of what sentence is sufficient, but no greater than necessary to address the relevant sentencing factors. Further, had Defendant committed the crimes that he was convicted of in the Western District of North Carolina today, he likely would have been more leniently sentenced. At the same time, an upward deviation in the Kentucky case is warranted because Defendant's criminal history and continued violations support an above-Guidelines sentence in that case. Further, Defendant choosing to use drugs after seeking help from probation for his drug problem supports a two-month upward deviation because that sort of use after seeking help needs to be discouraged.

In fashioning its recommended sentence, the Court must consider whether an additional term of supervised release is warranted. Here, a further term of supervised release is warranted. Defendant can benefit from a further term of supervised release as probation can assist Defendant reintegrate into society. Particularly in light of Defendant's lengthy initial sentence, a four-year term of supervised release is appropriate in the North Carolina case. For administrative ease, it would be inappropriate to require Defendant to serve a term of supervised release in the Kentucky case as imposing a term of supervised release in that case would not alter the conditions placed on Defendant, but would force the USPO to handle more paperwork.

Finally, the Guidelines suggest that the ***primary*** wrong in the supervised release context is violation of the Court's trust by an offender; the particular conduct is an important but secondary issue. *See* U.S.S.G. Chp. 7 Pt. A(3)(b) ("[A]t revocation the court should sanction primarily the

10

defendant's breach of trust, while taking into account, to a limited degree, the seriousness of the underlying violation and the criminal history of the violator."). Defendant's use of methamphetamine constitutes a serious breach of the Court's trust as his use establishes that, despite nearly two decades in federal prison, he was still willing to engage in the type of conduct that got him sent there.

The Court has attempted to pierce the complexity of the two cases, two judgments, and differing Guidelines ranges by focusing upon the conduct at issue and formulating the sentence that is sufficient, but not greater than necessary, to address all of the sentencing factors. Initially, during his allocution, Defendant appeared to place blame upon the system and others for his long history of illegal and disobedient conduct. But, as the allocution continued, it became clear to the undersigned that Defendant does recognize his own responsibility and genuinely intends to do better in the future. He appeared to fully appreciate that he has reached a low point and must do better in the future. The Court hopes it accurately perceived that motivation as future leniency will not be afforded, which was made clear to Defendant. Thus, the sixteenth-month prison term is intended to cut through the case complexity and impose a fair and straightforward sentence.

In sum, the below-recommended sentence is sufficient, but no greater than necessary to address the sentencing factors from 18 U.S.C. § 3553(a) that are included in the § 3583(e) analysis.

V.

Based on Defendant's admitted conduct, and in consideration of the factors discussed above, the Court **RECOMMENDS**:

(1) that Defendant be found guilty of the charged violations in each case;

(2) revocation and imprisonment for a term of 16 months in 6:20-CR-52-CHB-HAI;

(3) revocation and imprisonment for a term of 16 months in 6:24-CR-2-CHB-HAI;

11

(4) that the terms of imprisonment run concurrently, for a total of 16 months imprisonment;

(5) that the terms of imprisonment run concurrently with the sentence arising from the judgment in Defendant's state proceedings, specifically 24-F-20 in Pulaski County;

(6) that no supervised release be imposed in 6:20-CR-52-CHB-HAI;

(7) that a four-year term of supervised release be imposed in 6:24-CR-02-CHB-HAI;

(8) that Defendant be subject to drug treatment evaluation upon release from prison; and

(9) that Defendant be subject to mental health treatment evaluation upon release from prison.

Defendant's right of allocution under Rule 32.1 is preserved, as reflected in the record. D.E. 37.  Any waiver should comport with the Court's standard waiver form, available from the Clerk.  Absent waiver, the matter will be placed on District Judge Boom's docket upon submission.

The Court directs the parties to 28 U.S.C. § 636(b)(1) for appeal rights concerning this recommendation, issued under subsection (B) of the statute.  *See also* 18 U.S.C. § 3401(i).  As defined by § 636(b)(1), within fourteen days after being served with a copy of this recommended decision, any party may serve and file written objections to any or all portions for consideration, de novo, by the District Court.  Failure to make timely objection consistent with the statute and rule may, and normally will, result in waiver of further appeal to or review by the District Court and Court of Appeals.  *See Thomas v. Arn*, 474 U.S. 140, 155 (1985); *United States v. Walters*, 638 F.2d 947, 950 (6th Cir. 1981).

This the 31st day of January, 2024.



Signed By:
Hanly A. Ingram
United States Magistrate Judge